UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL DALEY,

                              Plaintiff,

          -against-

CABLEVISION SYSTEMS CORPORATION,

                              Defendant.

No. 12-cv-6316 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff Michael Daley asserts claims against his former employer, Defendant CSC
TKR, LLC ("Cablevision" or "Defendant"), incorrectly identified as "Cablevisions Systems
Corporation" in the Amended Complaint (ECF No. 8), arising out of the termination of his
employment on November 8, 2011.  Plaintiff alleges that Defendant discriminated against him
on the basis of his disability, in violation of the Americans with Disabilities Act ("ADA"), 42
U.S.C. § 12101, the Rehabilitation Act, 29 U.S.C. §706, and the New York State Human Rights
Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL").  Plaintiff further alleges that Defendant
retaliated against him in violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. §
2615(a) and ADA, 42 U.S.C. § 12203.  Before the Court is Defendant's motion for summary
judgment.  For the following reasons, Defendant's motion is GRANTED.

## BACKGROUND

The Court's account of the background is drawn from the parties' submissions, including
the Amended Complaint; Defendant's Statement of Material Undisputed Facts Pursuant to Local
Rule 56.1 (ECF No. 47.3, or "Defendant's 56.1 Statement"); the declaration of Joseph A.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/7/2016

Nuccio, Esq., and accompanying exhibits (ECF No. 47); and the Affidavit of Paul Hilber (ECF No. 48).

Pursuant to Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rules"), a party opposing a summary judgment motion shall respond to the moving party's statement of material facts in correspondingly numbered paragraphs and shall include "if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." Local Civ. R. 56.1(b). Though Defendant provided Plaintiff with a Local Rule 56.2 notice regarding the nature and consequences of summary judgment (ECF No. 49-1), Plaintiff did not submit a Local Civil Rule 56.1 statement with his papers opposing Defendant's motion. Instead, Plaintiff attached as exhibits to his opposition brief a voluminous number of documents, which are largely irrelevant to Plaintiff's claims or support the narrative set forth in Defendant's 56.1 Statement. "[D]istrict courts have 'broad discretion to determine whether to overlook a party's failure to comply with local court rules,' and a court 'may in its discretion opt to "conduct an assiduous review of the record" even where one of the parties has failed to file [a Local Civil Rule 56.1] statement.'" *Smith v. City of New York*, No. 12-cv-4892 (JPO), 2014 WL 5324323, at *1 (S.D.N.Y. Oct. 20, 2014) (quoting *Holtz v. Rockefeller & Co.,* 258 F.3d 62, 73 (2d Cir. 2001) (quoting *Monahan v. New York City Department of Corrections,* 214 F.3d 275, 292 (2d Cir. 2000))). "Where the court's independent review of the record yields evidence contrary to a given assertion in the moving party's Local Civil Rule 56.1 statement, or where a party fails to support an assertion by citing admissible evidence, the court may reject that assertion." *Smith v. City of New York*, 2014 WL 5324323, at *1 (citation omitted). "Conversely, where the moving party's Local Civil Rule

56.1 statement is not contradicted by the court's review of the record, then the party's assertions will be 'deemed admitted as a matter of law' for the purposes of a summary judgment motion. *Id*. (quoting *Chitoiu v. UNUM Provident Corp.,* No. 05-cv-8119, 2007 WL 1988406, at *1 n. 1 (S.D.N.Y. July 6, 2007) (granting summary judgment against *pro se* plaintiff who failed to respond to defendant's Local Civil Rule 56.1 statement of facts)). This Court's review of the record did not reveal any facts to contradict the material facts in Defendant's 56.1 Statement.[1] Therefore, the facts described herein are taken as true.

On or about December 21, 1998, Cablevision hired Plaintiff as a technician. (Def.'s 56.1 ¶ 1.) Plaintiff was provided a copy of the Cablevision Employee Handbook, which contains Cablevision's anti-discrimination policies and internal complaint procedures. (*Id*. ¶¶ 2–3.) Plaintiff later was promoted to an Advanced Field Services ("AFS") Tech position on or about June 29, 2004. (*Id*. ¶ 7.) As an AFS Tech, Plaintiff was responsible for installing, servicing, and repairing Cablevision telecommunications products and equipment. (*Id*.; Declaration of Joseph A. Nuccio ("Nuccio Decl."), Ex. 7.) In his deposition, Plaintiff described his job as "very physical." (Nuccio Decl., Ex. 1 at 38:12.) For example, it required him to use ladders (weighing approximately 85-90 pounds) to access Cablevision equipment on the sides or roofs of homes, (*Id*. at 38–41) and on occasion jump fences and climb trees. (*Id*. at 40:15–19.)

Prior to taking medical leave in June 2011, Plaintiff took medical leave on several other occasions. In 2000, Plaintiff took a 6 week leave of absence from Cablevision for ankle surgery. (Def.'s 56.1 ¶ 15; Nuccio Decl., Ex. 1 at 75:18–20.) In April 2002, Cablevision granted Plaintiff a 4 month medical leave following an automobile accident. (Def.'s 56.1 ¶ 16; Nuccio Decl., Ex.

---

[1] Plaintiff contends that Defendant's 56.1 Statement is incorrect in that it states Plaintiff injured his right shoulder rather than his left shoulder. (Pl.'s Opp. at 1.) While this detail is not determinative of Plaintiff's discrimination and retaliation claims, Plaintiff appears to be correct based upon this Court's review of the record, and this Court's recitation of the facts reflects that correction.

1 at 75:6–10.)  In December 2004, Plaintiff took a 3 month leave of absence after he broke his

finger in a truck door.  (Def.'s 56.1 ¶ 17; Nuccio Decl., Ex. 1 at 75:23–76:2.)  In May 2007,

Plaintiff took a 7 month leave of absence for shoulder surgery.  (Def.'s 56.1 ¶ 18; Nuccio Decl.,

Ex. 1 at 75:12–15.)  Finally, in 2009, Plaintiff took two more leaves—a 6 week leave in July

after suffering broken ribs during a motorcycle accident and a 7 week leave in December for

knee surgery.  (Def.'s 56.1 ¶ 19; Nuccio Decl., Ex. 1 at 75:13–17.)

On June 15, 2011, Plaintiff injured himself in a motorcycle accident.  (Def.'s 56.1 ¶ 20;

Nuccio Decl., Ex. 1 at 20:24–22:13.)  Plaintiff suffered a tear in his left shoulder and was

diagnosed with contusions.  (Def.'s 56.1 ¶ 21; Nuccio Decl., Ex. 1 at 21:8–13.)  Plaintiff's doctor

informed him that, given Plaintiff's job responsibilities, Plaintiff required surgery and

subsequent physical therapy.  (Def.'s 56.1 ¶ 23; Nuccio Decl., Ex. 1 at 25:24–26:21.)  Plaintiff

underwent shoulder surgery on August 24, 2011.  (Def.'s 56.1 ¶ 24; Nuccio Decl., Ex. 1 at

26:13–16.)  Following the surgery, Plaintiff testified that he continued to suffer from muscle

spasms (Nuccio Decl., Ex. 1 at 28:6) and has not regained full use of his shoulder.  (*Id*. at 29:5–

23.)  Plaintiff further testified that he is continuously in pain and cannot work.  (*Id*. at 36:13–25.)

On June 30, 2011, Plaintiff requested medical leave from Cablevision and advised that he

was "not sure" when he would return to work.  (Def.'s 56.1 ¶ 29; Nuccio Decl., Ex. 16.)

Cablevision granted Plaintiff medical leave, pursuant to the FMLA, through September 6,

2011—at which point his FMLA leave allotment would be exhausted.  (Def.'s 56.1 ¶ 30; Nuccio

Decl., Ex. 17.)  On September 8, 2011, Plaintiff requested additional leave, again for an

indefinite period.  (Def.'s 56.1 ¶ 31; Nuccio Decl., Ex. 18.)  At that time, Plaintiff's doctor

advised that he was capable of performing sedentary work but would not be able to perform the

work of an AFS Tech for approximately 6 months.  (Def.'s 56.1 ¶ 32; Nuccio Decl., Ex. 19.)

4

Cablevision extended Plaintiff's leave for an additional two months but advised Plaintiff that the last thirty days of leave should be used to identify a sedentary position he would be able to perform, termed a job search accommodation ("JSA").  (Def.'s 56.1 ¶ 33.)  A JSA period allows an employee on medical leave to search for vacant jobs which he or she may perform, with or without a reasonable accommodation.  (*Id.* ¶ 34.)  On September 23, 2011, Cablevision Human Resources Manager Jeanne Galiano spoke with Plaintiff regarding the JSA process.  (*Id.* ¶ 35; Nuccio Decl., Ex. 23.)  In an email dated September 26, 2011, Plaintiff advised Ms. Galiano that he would not apply for another job while still on disability.  (Def.'s 56.1 ¶ 36; Nuccio Decl., Ex. 21.)  Plaintiff requested that future communications with Cablevision be in writing.  (Def.'s 56.1 ¶ 37; Nuccio Decl., Ex. 21.)  Ms. Galiano wrote to Plaintiff again on September 29, 2011 and September 30, 2011 to further explain the JSA process.  (Def.'s 56.1 ¶¶ 40, 42; Nuccio Decl., Exs. 22–23.)  Throughout the JSA process, Plaintiff was notified of open call center positions in Long Island, but he refused to consider them as they were too far from his home in Rockland County.  (Def.'s 56.1 ¶ 45; Nuccio Decl., Ex. 1 at 69:19–70:2.)  Plaintiff also did not pursue any open sales positions.  (Nuccio Decl., Ex. 27.)  Plaintiff expressed interest in only a single position—a field service supervisor, which requires the same physical labor as an AFS Tech, and Plaintiff admitted would be considered a promotion from his previous role. (Def.'s 56.1 ¶¶ 47–48; Nuccio Decl., Ex. 1 at 70:2–9.)

On November 8, 2011, Plaintiff was informed via a letter that his leave period had expired.  (Def.'s 56.1 ¶ 50; Nuccio Decl., Ex. 28.)  The letter explained that in light of Plaintiff's medical information, which indicated he would not be able to return to work with or without a reasonable accommodation until February 23, 2012 at the earliest and that Plaintiff still could not provide a date certain to return to work, Plaintiff's request for additional leave would pose an

"undue hardship" to Cablevision.  (*Id.*)  The letter also stated that Plaintiff had participated in the JSA process since September 30, 2011 and had only applied for a single position (the field service supervisor—a promotion).  (*Id.*)  Consequently, Plaintiff's employment with Cablevision was terminated on November, 8 2011.  (*Id.*)

On November 16, 2011, Plaintiff filed a charge with the United States Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination and retaliation.  (Def.'s 56.1 ¶ 55; Nuccio Decl., Ex. 29.)  On June 27, 2012, the EEOC dismissed the charge—stating it was "unable to conclude that the information obtained establishes violations" of the relevant statutes.  (Def.'s 56.1 ¶ 56; Nuccio Decl., Ex. 30.)

In April 2012, Plaintiff applied for a field service tech position with Cablevision in West Nyack, but he was not selected for the position.  (Def.'s 56.1 ¶ 57.)  During his deposition, Plaintiff admitted that when he applied for that job, he was not certain that he was medically cleared to perform the job responsibilities.  (Def.'s 56.1 ¶ 58; Nuccio Decl., Ex. 1 at 93:17-25.)

## STANDARD ON A MOTION FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of pointing to evidence in the record, "including depositions, documents [and] affidavits or declarations," *id.* at 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party also may support an assertion that there is no genuine dispute by "showing . . . that [the] adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(B).  If the moving party fulfills its preliminary burden, the onus shifts to

the non-moving party to identify "specific facts showing that there is a genuine issue for trial."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal citation and quotation marks

omitted).  A genuine dispute of material fact exists when "the evidence is such that a reasonable

jury could return a verdict for the nonmoving party."  *Id.* at 248; *accord Benn v. Kissane*, 510 F.

App'x 34, 36 (2d Cir. 2013) (summary order).  Courts must "constru[e] the evidence in the light

most favorable to the non-moving party and draw[ ] all reasonable inferences in its favor."

*Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (internal

quotation marks omitted).  In reviewing the record, "the judge's function is not himself to weigh

the evidence and determine the truth of the matter," nor is it to determine a witness's credibility.

*Anderson*, 477 U.S. at 249.  Rather, "[t]he inquiry performed is the threshold inquiry of

determining whether there is the need for a trial."  *Id.* at 250.

Summary judgment should be granted when a party "fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  The party asserting that a fact is

genuinely disputed must support their assertion by "citing to particular parts of materials in the

record" or "showing that the materials cited do not establish the absence . . . of a genuine

dispute."  Fed. R. Civ. P. 56(c)(1).  "Statements that are devoid of any specifics, but replete with

conclusions, are insufficient to defeat a properly supported motion for summary judgment."

*Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).  The nonmoving party "may not

rely on conclusory allegations or unsubstantiated speculation."  *FDIC v. Great Am. Ins. Co.*, 607

F.3d 288, 292 (2d Cir. 2010) (internal citation and quotation marks omitted).  Moreover, "[a non-

moving party's] self-serving statement, without direct or circumstantial evidence to support the

charge, is insufficient to defeat a motion for summary judgment."  *Fincher v. Depository Trust &*

7

*Clearing Corp.*, No. 06 Cv. 9959 (WHP), 2008 WL 4308126, at *3 (S.D.N.Y. Sept. 17, 2008)

aff'd, 604 F.3d 712 (2d Cir. 2010) (citing *Gonzales v. Beth Israel Med. Ctr.*, 262 F. Supp. 2d

342, 353 (S.D.N.Y. 2003)).

Because discrimination cases often require the Court to conduct "an assessment of

individuals' motivations and state of mind," summary judgment should be used "sparing[ly]"

"because of juries' special advantages over judges in this area." *Brown v. Henderson*, 257 F.3d

246, 251 (2d Cir. 2011) (citations and internal quotations omitted).  At the same time, "an

employment discrimination plaintiff faced with a properly supported summary judgment motion

must 'do more than simply show that there is some metaphysical doubt as to the material facts.'

[He] must come forth with evidence sufficient to allow a reasonable jury to find in [his] favor."

*Id.* at 252 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

(1986)).

"When a *pro se* litigant is involved, the same standards for summary judgment apply, but

'the *pro se* litigant should be given special latitude in responding to a summary judgment

motion.'" *Williams v. Savory*, 87 F. Supp. 3d 437, 451 (S.D.N.Y. 2015) (quoting *Knowles v. N.Y*

*City Dep't of Corr.*, 904 F. Supp. 217, 220 (S.D.N.Y. 1995) (citation and internal quotation

marks omitted)); *see also Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988) ("[S]pecial

solicitude should be afforded *pro se* litigants generally, when confronted with motions for

summary judgment.").

## DISCUSSION

## I.      Disability Discrimination Claims

Plaintiff's claims for disability discrimination under the ADA, NYSHRL, and

Rehabilitation Act are all analyzed under the *McDonnell-Douglas* burden-shifting framework.[2]

*See Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 (2d Cir. 2000) (ADA and NYSHRL

claims); *Stone v. City of Mount Vernon*, 118 F.3d 92, 96–97 (2d Cir. 1997), *cert. denied*, 522

U.S. 1112, 118 S. Ct. 1044, 140 L.E.2d 109 (1998) (ADA and Rehabilitation Act claims);

*McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013) (ADA and NYSHRL claims);

*Krasner v. City of New York*, 580 F. App'x 1, 2–3 (2d Cir. 2014) (ADA and NYSHRL claims).

To establish a *prima facie* case of discrimination, a plaintiff must show, by a preponderance of

the evidence, that: (1) his employer is subject to the applicable law; (2) he suffers from a

disability within the meaning of the applicable law; (3) he was qualified and able to perform the

essential functions of his job with or without reasonable accommodation; and (4) either his

employer failed to make such reasonable accommodations (failure to accommodate theory) or

his termination occurred under circumstances giving rise to an inference of discrimination

(wrongful discharge theory).  *Stone*, 118 F.3d at 96–97; *McMillan*, 711 F.3d at 125.  The burden

then shifts to the defendant "to demonstrate that the employee's proposed accommodation would

have resulted in undue hardship," *Parker*, 204 F.3d at 332 (failure to accommodate theory), or to

introduce admissible evidence of a "legitimate non-discriminatory reason for the discharge."

*McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009) (wrongful discharge

---

[2] "A claim of disability discrimination under [NYSHRL] is governed by the same legal standards as govern federal ADA claims.  Thus, to the extent that [plaintiff] brings a state-law disability-discrimination claim, it survives or fails on the same basis as his ADA claim." *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 (2d Cir. 2006) (citing *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 n. 1 (2d Cir. 2000)).

theory).  If the defendant proffers a non-discriminatory reason for termination, then summary

judgment for the defendant is appropriate unless the plaintiff can demonstrate that the proffered

reason for termination is pretext, *McBride*, 583 F.3d at 96 (wrongful discharge theory).

### A.  *Prima Facie* Case

Defendant does not dispute that Plaintiff has satisfied the first and second elements of the

*McDonnell-Douglas* test.  Nevertheless, Defendant contends that Plaintiff's claim fails because

he cannot establish the third element—that he was qualified and able to perform the essential

functions of his job, with or without a reasonable accommodation.  (Def.'s Mot. at 12.)

Defendant further argues that Plaintiff cannot make out a claim under the failure to accommodate

theory because the evidentiary record reflects that Cablevision had a legitimate reason for

terminating Plaintiff.  (*Id*. at 17.)

### 1.  Essential Functions of Employment

Essential functions constitute "'fundamental' duties to be performed in the position in

question, but not functions that are merely 'marginal.'"  *Stone*, 118 F.3d at 97 (quoting 29 C.F.R.

§ 1630.2(n)(1) (1996)).  A job function may be essential for a number of reasons, including that

"the reason the position exists is to perform that function," the function is "highly specialized,"

or only a limited number of employees can perform the function.  *Stone*, 118 F.3d at 97.  Courts

must conduct a "fact-specific inquiry" to determine whether job duties are essential in nature.

*McMillan*, 711 F.3d at 126 (quoting *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 140 (2d

Cir. 1995).  Factors to consider include: "(i) [t]he employer's judgment as to which functions are

essential; (ii) [w]ritten job descriptions . . .; (iii) [t]he amount of time spent on the job performing

the function; (iv) [t]he consequences of not requiring the incumbent to perform the function; (v)

[t]he terms of a collective bargaining agreement; (vi) [t]he work experience of past incumbents

in the job; and/or (vii) [t]he current work experience of incumbents in similar jobs." *Stone*, 118

F.3d at 97 (citing 29 C.F.R. § 1630.2(n)).  Courts "give considerable deference to an employer's

determination as to what functions [of a job] are essential . . . ." *McMillian*, 711 F.3d at 126.

The evidentiary record reflects that Plaintiff's job responsibilities as an AFS Tech

included traveling to customers' residences; maneuvering a twenty-foot, 85-90 pound ladder;

accessing Cablevision equipment on the sides or roofs of homes; and jumping fences and

climbing trees.  (Nuccio Decl., Ex. 1 at 38–41.)  Plaintiff himself admitted that his job was "very

physical."  (*Id.* at 38:12.)  Following his 2011 motorcycle accident, Plaintiff underwent surgery

on his left shoulder.  (Def.'s 56.1 ¶ 24; Nuccio Decl., Ex. 1 at 26:13–16.)  During his deposition,

Plaintiff testified that he suffered from muscle spasms, has not regained full use of his shoulder,

is in continuous pain, and cannot work.  (Nuccio Decl., Ex. 1 at 28–36.)  Cleary then, Plaintiff

could not perform the essential functions of an AFS Tech.  Indeed, where an employee concedes

that he is unable to work at all, he is *per se* unable to perform the essential functions of his

position.  *Abato v. New York City Off-Track Betting Corp.*, No. 03-cv-5849 (LTS) (HPB), 2007

WL 1659197, at *5 (S.D.N.Y. June 7, 2007) (citing *Mescall v. Marra*, 49 F. Supp. 2d 365, 375–

76 (S.D.N.Y. 1999)).

## 2. Reasonable Accommodation

Reasonable accommodations include "modification of job duties and schedules, alteration

of the facilities in which a job is performed, acquisition of devices to assist the performance of

job duties, and, under certain circumstances, 'reassignment to a vacant position.'"  *McBride v.*

*BIC Consumer Products Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009) (citing 42 U.S.C. §

12111(9)(B); *Jackan v. N.Y. State Dep't of Labor*, 205 F.3d 562, 566 (2d Cir. 2000)).  The

employee "bears the burdens of both production and persuasion as to the existence of some

accommodation . . . including the existence of a vacant position for which [he] is qualified." *Id.* (citing *Jackan*, 205 F.3d at 566–67; *Borkowski*, 63 F.3d at 137–38). Moreover, the Second Circuit is clear that an employer is not required to create an entirely new position to provide a reasonable accommodation to an employee. *See Davidson v. LaGrange Fire Dist.*, 523 F. App'x 838, 839 (2d Cir. 2013) (citing *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 187 (2d Cir. 2006); *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 99 (2d Cir. 1999)). Nor is an employer required to promote an employee as a reasonable accommodation. *McBride*, 583 F.3d at 98–99 (collecting cases).

Here, Plaintiff has failed to proffer any evidence of a reasonable accommodation to the AFS Tech position. It appears that Defendant assisted Plaintiff in attempting to locate a vacant position through the JSA process (i.e., a reasonable accommodation); however, Plaintiff resolutely refused to consider sales positions (sedentary positions Plaintiff was capable of performing) or any position other than the field supervisor role, which Plaintiff concedes would have been a promotion. (Def.'s 56.1 ¶ 45, 47–48; Nuccio Decl., Ex. 1 at 69:19–70:2–9.) In fact, Plaintiff only applied to a single position during the JSA process (field supervisor role). Though Plaintiff contests Defendant's characterization of Plaintiff as "entrenched" during the JSA process (Pl.'s Opp. at 2), he marshals no evidence to support this argument, and, in fact, all the evidence suggests that Plaintiff was "responsible for a breakdown" of the JSA process. *Nugent v. St. Luke's-Roosevelt Hosp. Ctr.*, 303 F. App'x 943, 946 (2d Cir. 2008) (holding that "[a]n employee who is responsible for the breakdown of that interactive process may not recover for a failure to accommodate"). As Plaintiff cannot demonstrate that he would have been able to perform the essential elements of the AFS Tech job, even with a reasonable accommodation, Plaintiff's *prima facie* discrimination case fails.

12

### B. Legitimate Reasons for Termination

Even assuming, *arguendo*, that Plaintiff could establish a *prima facie* case of discrimination, Defendant has proffered legitimate, nondiscriminatory reasons for Plaintiff's termination. "An employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *DeLuca v. Allied Domecq Quick Serv. Rests.*, No. 03 Cv. 5142 (JFB) (AKT), 2006 WL 1662611, at *9 (E.D.N.Y. June 13, 2006) (internal citation and quotation marks omitted). Nevertheless, "an employer's explanation of its reasons must be clear and specific in order to afford the employee a full and fair opportunity to demonstrate pretext. Where an employer's explanation, offered in clear and specific terms, is reasonably attributable to an honest even though partially subjective [belief], no inference of discrimination can be drawn." *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 105 (2d Cir. 2001) (internal citations and quotation marks omitted).

Here, Defendant contends that Plaintiff was terminated because (i) allowing Plaintiff indefinite leave would impose an undue hardship on Defendant; (ii) Plaintiff failed to provide a date on which he might be able to return to work, with or without a reasonable accommodation; and (iii) Plaintiff caused a breakdown in the JSA process initiated to find Plaintiff alternative employment. (Def.'s Mot. at 17.) With respect to indefinite leave, the Second Circuit is clear that "[t]he duty to make reasonable accommodations does not, of course, require an employer to hold an injured employee's position open indefinitely while the employee attempts to recover . . . ." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 338 (2d Cir. 2000). Moreover, as discussed above, Plaintiff was unable to perform the essential functions of his job, with or without a reasonable accommodation, and Plaintiff refused to consider sedentary positions he

13

may have been capable of performing.  The Court finds that these are legitimate, non-discriminatory reasons for Plaintiff's termination.  *See Alston v. Microsoft Corp.*, 851 F. Supp. 2d 725, 732 (S.D.N.Y. 2012) *aff'd*, 519 F. App'x 23 (2d Cir. 2013) (holding that plaintiff's "failure to respond" to defendant's "repeated and unavailing efforts to arrange for [plaintiff] to return to work" and ultimate failure to return to work constitute a legitimate reason for termination).

### C.  Rehabilitation Act Claim

Defendant is entitled to summary judgment on Plaintiff's Rehabilitation Act claim not only because Plaintiff abandoned this claim in failing to address it in his opposition brief but also because Plaintiff failed to establish that Defendant receives federal financial assistance.  *See Santiago v. Newburgh Enlarged City Sch. Dist.*, 485 F. Supp. 2d 327, 338 (S.D.N.Y. 2007). Even a plaintiff proceeding *pro se* will be deemed to have abandoned a claim if he fails to respond to defendant's summary judgment arguments.  *See Oparaji v. Atl. Container Line*, No. 07-cv-2124 (GEL), 2008 WL 4054412, at *12 (S.D.N.Y. Aug. 28, 2008) *aff'd*, 363 F. App'x 778 (2d Cir. 2010).  Additionally, one of the elements of a Rehabilitation Act discrimination claim requires a plaintiff to prove that "the program denying the plaintiff participation received federal financial assistance."  *Rothschild v. Grottenthaler*, 907 F.2d 286, 290 (2d Cir. 1990) (citation omitted).  In the instant case, Plaintiff has made no attempt to proffer such a showing, and, based upon the Court's review of the record, there is no evidence to suggest that Defendant receives federal financial assistance.  Accordingly, the Court dismisses Plaintiff's Rehabilitation Act claim.

## II.    Retaliation Claims

Plaintiff's claims for retaliation in violation of the FMLA and the ADA are also analyzed under the *McDonnell-Douglas* burden-shifting framework. To establish a *prima facie* case of retaliation under the ADA, a plaintiff must show: "(1) the employee was engaged in an activity protected by the ADA, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action." *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999). An FMLA retaliation claim requires a plaintiff to demonstrate the following: "1) he exercised rights protected under the FMLA; 2) he was qualified for his position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004). "If a plaintiff establishes a prima facie case, then the burden shifts to a defendant to articulate a legitimate, non-discriminatory reason for its actions." *Achille v. Chestnut Ridge Transp., Inc.*, 584 F. App'x 20, 22 (2d Cir. 2014) (citing *McDonnell Douglas,* 411 U.S. at 802). "'Upon such a showing, the defendant must demonstrate legitimate reasons for its actions, whereupon the plaintiff bears the burden of showing that the defendant's explanations are pretext for the true discriminatory motive.'" *Achille*, 584 F. App'x at 22 (quoting *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 714 (2d Cir. 1996)).

### A.  ADA Claim

Defendant contends that summary judgment is appropriate on Plaintiff's ADA retaliation claim because Plaintiff did not engage in protected activity within the meaning of the ADA. Though Plaintiff's opposition brief focuses on his EEOC charge as the requisite protected

15

activity, this Court also will address other potential evidence of Plaintiff's engagement in a protected activity.

Plaintiff asserts in his opposition brief that he engaged in protected activity by filing a charge with the EEOC against Defendant.  (Pl.'s Opp. at 3.)  However, as Defendant points out, Plaintiff filed his EEOC charge *after* his termination, so it cannot have served as the basis for a retaliatory firing.  (Def.'s Mot. at 19, n. 4; Def.'s 56.1 ¶ 55; Nuccio Decl., Ex. 29.)

Though "[r]equesting a reasonable accommodation of a disability is an ADA-protected activity," *Rodriguez v. Atria S. Living Grp., Inc.*, 887 F. Supp. 2d 503, 512 (S.D.N.Y. 2012) (citing *Weixel v. Board of Educ. of City of New York,* 287 F.3d 138, 149 (2d Cir. 2002)) "any activity comprising Plaintiff's failure-to-accommodate claim . . . cannot also constitute protected activity such as that required to form the basis of a retaliation claim."  *Snowden v. Trustees of Columbia Univ.*, No. 12-cv-3095 (GBD), 2014 WL 1274514, at *6 (S.D.N.Y. Mar. 26, 2014) *aff'd*, 612 F. App'x 7 (2d Cir. 2015) (citing *Missick v. City of New York,* 707 F. Supp. 2d 336, 356–57 ("[Defendant's] alleged failure to accommodate [Plaintiff's] disability subsequent to an ADA ... protected request cannot be bootstrapped into a viable disability retaliation claim.")).  Therefore, Plaintiff's ADA retaliation claim cannot be premised upon his request for an accommodation or participation in the JSA process.

The record is devoid of any other evidence from which this Court could infer that Plaintiff engaged in protected activity.  Notably, none of Plaintiff's emails or letters make reference to any sort of disability discrimination, and Plaintiff, having requested that all communications between Defendant and him be in writing, cannot convincingly argue that he ever verbally vocalized complaints.  Additionally, complaints made prior to Plaintiff's June 2011 injury cannot constitute protected activity as Plaintiff has not shown he was disabled at that time.

16

In any event, broad-based workplace complaints unrelated to discrimination do not comprise protected activity. *See, e.g.*, *Montanile v. Nat'l Broad. Co.*, 211 F. Supp. 2d 481, 488 (S.D.N.Y. 2002) *aff'd sub nom. Montanile v. Nat'l Broad. Co.*, 57 F. App'x 27 (2d Cir. 2003); *Penberg v. HealthBridge Mgmt.*, 823 F. Supp. 2d 166, 191 (E.D.N.Y. 2011) ("To the extent that an employee complains about perceived 'unfair' treatment relating to job responsibility, hiring practices, or corporate policy, but fails to link the treatment to unlawful discrimination or to his protected status, he fails to establish that he was engaged in protected activity.") (collecting cases). Because Plaintiff cannot point to any evidence that he engaged in a protected activity within the meaning of the ADA, his *prima facie* case of retaliation under the ADA fails.

### B.  FMLA Claim

Defendant is entitled to summary judgment on Plaintiff's FMLA retaliation claim not only because Plaintiff abandoned this claim in failing to address it in his opposition brief but also because Plaintiff failed to establish that he was qualified for the position (second prong of *prima facie* case). As discussed in Section I.C *supra*, a *pro se* plaintiff who does not address a moving party's argument regarding a claim will be deemed to have abandoned that claim. *See Oparaji v. Atl. Container Line*, No. 07-cv-2124 (GEL), 2008 WL 4054412, at *12 (S.D.N.Y. Aug. 28, 2008) *aff'd*, 363 F. App'x 778 (2d Cir. 2010). Assuming *arguendo* that Plaintiff's FMLA retaliation claim was not abandoned, his claim still fails because Plaintiff cannot establish he was qualified for the position. *See* Section I.A *supra* (discussing Plaintiff's own admission that he was unqualified to work, let alone perform the responsibilities of the AFS Tech role, with or without a reasonable accommodation); *see also Sarno*, 183 F.3d at 161 ("The fact that [plaintiff] was not restored to his position at the end of that 12–week period did not infringe his FMLA rights because it is also undisputed that at the end of that period he remained unable to perform

the essential functions of his [] position."); *Vaigasi v. Solow Mgmt. Corp.*, No. 11-cv-5088 (RMB) (HBP), 2014 WL 1259616, at *12 (S.D.N.Y. Mar. 24, 2014), *appeal dismissed* (June 23, 2014), *reconsideration denied*, No. 11-cv-5088 (RMB), 2014 WL 5809604 (S.D.N.Y. Nov. 6, 2014), *appeal dismissed* (Mar. 4, 2015) (dismissing plaintiff's FMLA retaliation claim on the grounds that he was not qualified for the position because he was "totally disabled" at the time of his termination).  The Court therefore grants summary judgment on Plaintiff's FMLA retaliation claim.

### C.  Legitimate Reason for Termination

Even if Plaintiff had established a *prima facie* case of retaliation, summary judgment is still appropriate on his ADA and FMLA retaliation claims because "he has failed to provide any evidence of pretext to rebut [Defendant's] legitimate, non-retaliatory reason for his termination." *Achille v. Chestnut Ridge Transp., Inc.*, 584 F. App'x 20, 22-23 (2d Cir. 2014).  Defendant asserts that it terminated Plaintiff because (i) allowing Plaintiff indefinite leave would impose an undue hardship on Defendant; (ii) Plaintiff failed to provide a date on which he might be able to return to work, with or without a reasonable accommodation; and (iii) Plaintiff caused a breakdown in the JSA process initiated to find Plaintiff alternative employment.  For the same reasons as discussed in Section I.B *supra*, these constitute legitimate, non-retaliatory reasons for termination, and Plaintiff has not carried his burden to show that Defendant's proffered reasons for termination are pretextual.  In his opposition brief, Plaintiff attempts to argue that he was terminated following a May 2011 meeting with Paul Hilber, Senior Vice President of Human Resources at Cablevision, regarding harassment charges.  (Pl.'s Opp. at 4.)  Plaintiff does not cite to any evidence in support of this argument, nor can the Court locate any evidence to substantiate this proposition in the considerable number of documents Plaintiff attached to his opposition

brief or Defendant's exhibits.  Though it is this Court's "duty to view evidence in the light most

favorable to the party opposing summary judgment, a rule [courts] follow with particular

solicitude for *pro se* litigants . . . even a *pro se* litigant cannot defeat a motion for summary

judgment through mere allegations or conclusory statements unsupported by facts." *Simpson v.

Oakes*, No. 15-635-PR, 2016 WL 791088, at *1 (2d Cir. Mar. 1, 2016) (internal citations

omitted).

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED.

The Court respectfully directs the Clerk to terminate the motion at ECF No. 45, enter judgment

in favor of Defendant, and close this case.

Dated:   March 7, 2016                           SO ORDERED:
     White Plains, New York

                                     NELSON S. ROMÁN
                                     United States District Judge